Citation Nr: 1706029 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 10-20 245 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for residuals of a left hand laceration.

3. Entitlement to service connection for a bilateral foot disability, to include residuals of frostbite, heel spurs and plantar fasciitis. 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Journet Shaw, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from October 1986 to September 1994. Among other awards, the Veteran received the Good Conduct Medal and Army Service Ribbon. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

The Veteran testified before the undersigned Veterans Law Judge at an August 2012 hearing held at the RO (Travel Board). A transcript of this hearing is of record.

The Board remanded the issues on appeal for additional development in January 2014, August 2014, and July 2015. As the actions specified in the remands have been completed, the matter has been properly returned to the Board for appellate consideration. Stegall v. West, 11 Vet. App. 268 (1998). 

The issue of entitlement to service connection for gastroesophageal reflux disease (GERD) was raised by the record in an August 2002 statement. In August 2014 and July 2015, this matter was referred by the Board for initial adjudication by the Agency of Original Jurisdiction (AOJ). It does not appear that the AOJ has yet taken action on the issue, and as Board does not therefore have jurisdiction over it, it is referred again to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016). 

The issue of entitlement to service connection for a bilateral foot disability, to include residuals of frostbite, heel spurs and plantar fasciitis, is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. The evidence does not demonstrate that the Veteran's currently diagnosed hypertension had its onset during active duty service, was manifested within one year of separation, or is otherwise etiologically related to service. 

2. No left hand laceration or cold injury occurred in service. 


CONCLUSIONS OF LAW

1. The criteria to establish entitlement to service connection for hypertension have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2016).

2. The criteria to establish entitlement to service connection for residuals of a left hand laceration have not been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the claims file, and has an obligation to provide an adequate statement of reasons or bases supporting its decision. 38 U.S.C.A. § 7104; Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). While the Board must review the entire record, it need not discuss each piece of evidence. Id. The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. It should not be assumed that the Board has overlooked pieces of evidence that are not explicitly discussed herein. Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Id. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Equal weight is not accorded to each piece of evidence contained in the record, and every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Id. 

I. Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The Board finds that the notice requirements have been satisfied by letters in May 2005 and March 2009. 

The Board concludes that the duty to assist has been satisfied as all pertinent and available service records, post-service treatment records, and lay statements are in the claims file. 

In September 2011, the RO issued a formal finding on the unavailability of the Veteran's VA treatment records from January 1, 1995 to March 17, 1998; the medical center in question certified that there was no record of any treatment of the Veteran over the requested period. The RO listed the efforts to obtain the Veteran's VA treatment records, explained that all efforts to obtain the needed information had been exhausted, and stated that any further attempts would be futile.

Additionally, multiple attempts were made to retrieve identified service and post-service treatment records from the Darnall Army Medical Center from October 3, 1986 to September 28, 1994 and from September 29, 1994 to December 31, 1995. The RO notified the Veteran in March 2015 and November 2015 correspondence of the unavailability of the treatment records and requested that the Veteran provide any records that could substitute for these records. The facility again certified in February 2016 that it had no record of treatment for the Veteran over the identified period. In July 2016 and October 2016, the RO issued a formal finding on the unavailability of the Veteran's post-service treatment records. The RO listed the efforts to obtain those records. 

The Veteran underwent VA examinations in December 1999 and July 2011, with a subsequent addenda opinion provided in March 2014. The Veteran has not argued, and the record does not reflect, that these examinations are inadequate for rating purposes. 38 C.F.R. § 3.159(c) (4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). The examiners conducted thorough physical examinations and offered requested medical opinions with supporting rationales. The examinations of record are adequate for adjudication.

In August 2012, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. During that hearing, the Veteran's representative and the Veterans Law Judge explained the issues and asked the Veteran questions to ascertain the nature and history of his hypertension and left hand laceration. The hearing was also focused on the elements necessary to substantiate his claims. Neither the Veteran nor his representative has suggested any deficiency in the conduct of that hearing; and all pertinent evidence that might substantiate the claim was identified by the Veteran and attempted to be obtained. Therefore, the Board finds that the Veterans Law Judge complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). Bryant v. Shinseki, 23 Vet. App. 488 (2010).

VA has provided the Veteran with every opportunity to submit evidence and arguments in support of his claims. The Veteran has not identified any outstanding evidence that needs to be obtained. All relevant evidence necessary for an equitable disposition of the Veteran's appeal of this issue has been obtained and the case is ready for appellate review.

For the above reasons, the Board finds that VA has fulfilled its duties to notify and assist the Veteran. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of the claims.

II. Service Connection 

A. Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Generally, service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For certain chronic diseases, such as hypertension, a presumption of service connection arises if the disease is manifested to a degree of 10 percent within one year following discharge from service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a). For those listed chronic conditions, a showing of continuity of symptoms affords an alternative route to service connection when the requirements for application of the presumption are not met. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F. 3d 1331 (Fed. Cir. 2013). 

Continuity of symptomatology may establish service connection if a claimant can demonstrate (1) that a condition was "noted" during service; (2) there is post-service evidence of the same symptomatology; and (3) there is medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

Notwithstanding the provisions relating to presumptive service connection, a Veteran may establish service connection for a disability with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

A layperson is competent to report on the onset and history of his or her current symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if: (1) the layperson is competent to identify the medical condition; (2) the layperson is reporting a contemporaneous medical diagnosis; or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

B. Hypertension

The Veteran is seeking service connection for hypertension. In particular, at his August 2012 Board hearing, the Veteran testified that he was told that he had high blood pressure and was given high blood pressure medication prior to his discharge from the military in approximately 1993. 

Available service treatment records do not reflect any diagnosis of hypertension. A January 1991 emergency care and treatment record reflects a blood pressure reading of 142/92. All other recorded blood pressure readings were normal, and there is no indication of use of medications for blood pressure control. A separation examination showed that the Veteran's clinical heart evaluation was normal and his blood pressure was 136/86. An undated list of conditions prepared in service following the apparent loss of his medical records noted that the Veteran reported that his blood pressure was high at sometimes. 

As previously discussed, the Veteran's post-service treatment records from Darnell Army Medical Center from September 1994 to December 1995 and VA treatment records from 1994 to 1998 were found to be unavailable; VA certified that there was no record of treatment. 

Post-service private treatment records from April 1997 to October 1997 document that the Veteran had normal blood pressure readings, except for one elevated blood pressure reading at 160/80. There were no findings related to hypertension.

Available VA treatment records from March 1998 to May 2016 describe the Veteran's history of hypertension treatment. Prior to the Veteran's formal diagnosis, the records include blood pressure readings beginning in July 1998. In September 2000, records show that the Veteran had an elevated blood pressure reading at 154/98. The Veteran reported that in December 2001, he was provided a home BP kit and BP flow sheet. A January 2002 VA treatment record notes that the Veteran's home BP readings from December 2001 to January 2002 had normal systolic readings, but his diastolic readings were in the 90's. Treatment with Maxzide was discussed. Records show that the Veteran began receiving high blood pressure medication in October 2003, following formal diagnosis of hypertension in mid-to-late 2002. Subsequent VA treatment records shows continued treatment for hypertension with medication, but no etiological opinion was provided. 

In March 2014, the Veteran underwent a VA examination. The Veteran reported his history of hypertension. Upon objective evaluation, the examiner diagnosed the Veteran with hypertension. While noting the Veteran's in-service blood pressure reading of 142/92, his report at his separation examination of occasional high blood pressure, and his report that he was prescribed blood pressure medication during service, the examiner found that the Veteran had no diagnosis of high blood pressure or hypertension in his service treatment records. Based on a review of the Veteran's medical records, the examiner concluded that there was no record available to support a diagnosis of or treatment for high blood pressure prior to 2001. The examiner opined that the Veteran's hypertension was less likely than not incurred in or caused by his active duty service. 

Based on a careful review of the subjective and clinical evidence, the Board finds that the preponderance of the evidence does not support finding in favor of service connection for hypertension is warranted. 

As hypertension is a chronic disease under 38 C.F.R. § 3.309(a), the Board has considered whether the Veteran was entitled to presumptive service connection under 38 C.F.R. § 3.307(a)(3). However, the clinical evidence demonstrates that the earliest record supporting a diagnosis for hypertension was in 2001, about six years after his discharge. Although the Veteran contends that he received high blood pressure medication prior to his discharge, his service treatment records do not support that contention. No medication use is reflected in the available records, and the Veteran had only one elevated blood pressure reading documented during service; there was no report of a diagnosis of hypertension or even chronic blood pressure elevations that would have required medication. Notably, at his September 1994 separation examination, no reference to the Veteran being treated for hypertension was noted. Only a self-report of having elevated blood pressures at times was made, but that report was not supported by any clinical evidence. Private treatment records in 1997 showed one elevated blood pressure reading and no indication that the Veteran was receiving treatment for hypertension. Not until December 2001 do available post-service VA treatment records show that the Veteran had elevated blood pressure readings that VA physicians determined required treatment with medication. Thus, the Board finds that the evidence does not show that the Veteran's hypertension manifested within one year of his discharge; nor does it show that he had continuous symptoms of hypertension following service. Accordingly, the Veteran's hypertension, as a chronic disease, is not entitled to presumptive service connection. 

Additionally, the Board finds that the evidence does not show that the Veteran's hypertension is directly related to his active duty service. On the same basis as above, despite the Veteran's lay assertions, the available clinical evidence does not show that the Veteran's currently diagnosed hypertension had its onset during his active duty, or was otherwise etiologically related to service. He had one isolated elevated blood pressure reading during service, no evidence of treatment for high blood pressure, and the first documented clinical evidence of hypertension was no earlier than 2001. Finally, the March 2014 VA examiner, after a complete review of the lay and medical evidence, and a fully explained rationale, opined that the Veteran's hypertension was not incurred in or caused by his active duty service. Accordingly, the Board finds that the Veteran is not entitled to service connection on a direct basis. 

In summary, the preponderance of the evidence demonstrates that the Veteran is not entitled to service connection for hypertension on a direct or presumptive basis; therefore, the benefit-of-the-doubt rule does not apply, and the service connection claim must be denied. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. §3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

C. Residuals of a Left Hand Laceration 

The Veteran is seeking service connection for residuals of a left hand laceration. During service, while stationed in Germany, the Veteran asserts that in approximately 1990, he injured his left hand when he grabbed some concertina wire. He said that he was treated at a German hospital for a cut on his left hand. He received stitches and had a scar on his left fourth finger. After the Veteran had his stitches removed, he asserts that his left hand had lost feeling. Alternatively, the Veteran suggests that his left hand problems were also caused by frostbite. 

Military personnel records show that the Veteran's military occupational specialty was Single Channel Radio Operator. The Veteran was stationed in Germany from June 1990 to April 1992. See DD Form 214. 

Available service treatment records do not document any findings related to an injury sustained to the Veteran's left hand from an incident with grabbing wire. He did undergo surgery for a left wrist ganglion cyst in 1989. At his August 1994 separation examination, no left hand problems, including scars were noted. An undated list of conditions noted that the Veteran reported having frostbite on both feet. 

At a December 1999 VA examination to evaluate the Veteran's service-connected postoperative ganglion cyst with left wrist strain and residual scar, objective findings were made related to his left hand. Reportedly, the Veteran had sustained a laceration of his left palm when he came into contact with concertina wire. An objective evaluation revealed that the Veteran had a six centimeter (cm.) well-healed scar on the palm of his left hand. 

A July 2004 VA X-ray report of the left hand was negative. 

An August 2008 VA Primary Care Note documents that the Veteran complained of swelling in the left hand for the past two months. No swelling was observed at the time of the visit. 

Subsequent VA treatment records do not document any complaints, treatment, or diagnosis for any residuals of a left hand laceration. 

As is noted above, complete service treatment records are not available; while still on duty, the Veteran's records were lost by the service department. Under such circumstances, there is a heightened obligation to assist the Veteran in the development of the case, a heightened obligation to explain findings and conclusions, and a heightened duty to consider carefully the benefit of the doubt rule. See Washington v. Nicholson, 19 Vet. App. 362, 369-70 (2005); Cromer v. Nicholson, 19 Vet. App. 215, 217 (2005) (citing O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991)); Cuevas v. Principi, 3 Vet. App. 542, 548 (1992).

Nonetheless, the Board must conclude that preponderance of the evidence weighs against finding in favor service connection for residuals of a left hand laceration. Although the Veteran competently reports cutting his hand on concertina wire in service, his accounts of the injury are inconsistent. He has referred to injury of the little finger and of the palm, alternatively. Neither is documented in service records, nor do the available records refer to evidence of past injury until after service. Given the size of the currently identified palmar scar, a significant cut was involved and would reasonably expect to be referred to, at least at separation. It is also not mentioned in the summary of problems provided after service records were lost. Importantly, the ganglion cyst operation and the resulting scars from that procedure are noted. Simply put, the competent and credible evidence of record is against a finding of a laceration of the left hand during service. In the absence of injury, there can be no residuals, and hence service connection is not warranted.

Similarly, no cold injury of the hand is found to have occurred. While the Veteran was present in Germany, likely during a period of cold weather, there is no reference to any left hand cold injury or treatment in service records. The Veteran did refer to foot cold injuries in service, but in his silence excluded his upper extremity. 

The Board would additionally note that the complaints of occasional swelling and sensory impairment are consistent with his service-connected postoperative left wrist ganglion cyst.


ORDER

Entitlement to service connection for hypertension is denied.

Entitlement to service connection for residuals of a left hand laceration is denied. 


REMAND

Unfortunately, a remand is required in this case for the issue on appeal. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the claim so that the Veteran is afforded every possible consideration.

The Veteran's contention that his bilateral foot disabilities are related to in-service cold injuries has been previously developed. In a March 2016 VA Form 21-526EZ, however, the Veteran raised a new theory of entitlement for his service connection claim for a bilateral foot disability, asserting that his bilateral foot disability was secondary to his service-connected bilateral knee disabilities. Additional development in the form of a VA opinion is required to address whether any bilateral foot disability is secondary to the Veteran's service-connected bilateral knee disabilities. 

Accordingly, the case is REMANDED for the following action:

1. Obtain updated treatment records for the Veteran's bilateral foot and bilateral knee disabilities that are not already of record. 

2. After the above is completed, to the extent possible, obtain an addendum VA opinion from the September 2014 VA examiner, or another appropriately qualified examiner. Only if deemed necessary to provide an opinion, should the Veteran be afforded a new VA examination for his bilateral foot disability. Provide the claims file, including a copy of this REMAND, to the examiner for review. 

After reviewing the claims file, the examiner should respond to the following:

Is it at least as likely as not (50 percent probability or more) that any of the Veteran's current bilateral foot disabilities, including plantar calcaneal heel spurs and plantar fasciitis, was caused or, alternatively, aggravated (increased beyond the natural progression of the disability) by his service-connected bilateral knee disability?

A complete rationale for any opinion expressed must be provided. If an opinion cannot be expressed without resort to speculation, discuss why this is the case. In this regard, indicate whether the inability to provide a definitive opinion is due to a need for further information or because the limits of medical knowledge have been exhausted regarding the etiology of the disability at issue or because of some other reason.

3. Then, readjudicate the claim. If the benefits sought on appeal remain denied, the Veteran and his representative should be provided a supplemental statement of the case. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
JOHN Z. JONES
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs